329 So.2d 691 (1976)
Gilbert SANCHEZ
v.
Elayn HUNT, Director, Department of Corrections.
No. 57104.
Supreme Court of Louisiana.
March 29, 1976.
*692 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles L. Patin, Jr., Staff Atty., for defendant-relator.
Roland T. Huson, III, Office of Public Defender, Baton Rouge, for plaintiff-respondent.
MARCUS, Justice.
Gilbert Sanchez, an inmate at the Louisiana State Penitentiary at Angola, filed a petition for a writ of habeas corpus in district court in which he asked the court to order his transfer from maximum to medium security status at the prison. The district court granted the writ. We granted the application of the Department of Corrections for certiorari. 323 So.2d 139 (La.1975).
On December 6, 1973, Gilbert Sanchez was placed in administrative lockdown in connection with an investigation into his possible involvement in the stabbing death of another inmate, Jerry Hazel. On the following day, Sanchez was taken before the prison Disciplinary Board and, pursuant to the findings at the hearing, was ordered to remain in extended "lockdown" [1] status pending completion of the prison's investigation of the Hazel slaying. The board reaffirmed its action at a rehearing held in May. Sanchez appealed the board's order to the Director of Corrections, who upheld it on May 31, 1974.
Meanwhile, the West Feliciana Parish Sheriff's Office had open an investigation into Jerry Hazel's murder. Sanchez was a suspect in this investigation. On February 3, 1975, the grand jury of that parish returned a no true bill against Sanchez; the sheriff's office, however, has continued its investigation, and Sanchez remains the primary suspect.
At further hearings conducted on February 3, March 4, and June 3, 1975, the Disciplinary Board decided to maintain Sanchez' status in maximum security. This decision was based in part on evidence showing that he had engaged in a pattern of violence and self-mutilation, and in part on evidence of his involvement in Hazel's murder.
In October, 1974, Sanchez filed the instant petition for habeas corpus in the district court. Following an evidentiary hearing, the district court, on September 2, 1975, ordered the Department of Corrections to remove Sanchez from lockdown and to restore him to his previous status of medium security.
Prison officials must be accorded latitude in the administration of prison affairs. Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). It is settled that except in extreme cases the courts will not interfere with the conduct of a prison, with its regulations and their enforcement, or with its discipline. Douglas v. Sigler, 386 F.2d 684 (8th Cir. 1967). A reviewing court must not disturb an order of the agency charged with the administration of a prison unless, in such an extreme case, its order is clearly arbitrary or capricious.
*693 The legislature has delegated to the director of corrections broad authority to classify and discipline inmates within the jurisdiction of the department in order to maintain order and safety within Louisiana's prison system. La.R.S. 15:828; La.R.S. 15:829.
At the evidentiary hearing on Sanchez' petition for habeas corpus conducted by the district court on February 21, 1975, Major Herbert Byargeon, correctional officer at Angola and the person who presented Sanchez' case to the Disciplinary Board, testified with regard to Sanchez' record at the prison. He stated that he had information from confidential informants that the prisoner was involved in the stabbing death of Jerry Hazel, and that Warden Butler, then Associate Warden of Security, possessed additional information that connected Sanchez to the stabbing of another inmate, Samuel Harvey. Major Byargeon then read a report on Sanchez' institutional record at Angola that Warden Butler had compiled. The report stated that Sanchez was serving a sentence for his conviction of armed robbery, in which the victim was cut severely about the hands and arms. Previously, he had twice escaped from the Louisiana Training Institute in Monroe, and the Orleans Parish authorities had also filed a detainer on him for escape.
The report also stated that the inmate had committed five infractions of Angola's disciplinary rules. Two of these were for possession of contraband, the first for possession of a knife and the second for possession of a file (a potential weapon). A third infraction was for self-mutilation; Major Byargeon testified that on one occasion Sanchez had deliberately cut himself. Warden Butler's report ended with the observation that Sanchez' record clearly shows that he should be kept in lockdown. This information had been presented to the Disciplinary Board. William Kerr, chairman of the Disciplinary Board, also testified. He verified that the board considered the evidence produced by Major Byargeon in making its determination not to return Sanchez to the general prison population.
We conclude that there has been no showing that the Disciplinary Board acted arbitrarily or capriciously in ordering that Sanchez be placed and continued in maximum security (segregated from the general prison population). On the contrary, there was evidence indicating that the inmate was physically dangerous to himself or other prisoners. In the absence of a clear showing that the Disciplinary Board acted arbitrarily or capriciously, the district court erred in setting aside its order.

DECREE
For the reasons assigned, the judgment of the district court, which overturned the order of the Disciplinary Board, is reversed; and the writ of habeas corpus is hereby denied.
DIXON, J., concurs in the result.
NOTES
[1] Maximum security, or lockdown, is not solitary confinement, but is rather the placing of the inmate in a private cell apart from the general prison population. Under prison regulations, an inmate may be placed in administrative lockdown if he is suspected of having violated a prison rule until he is given a hearing before the Disciplinary Board. After such a hearing, the Disciplinary Board may rule that an inmate should be placed in extended lockdown for his own protection or for the protection of others. Thereafter, the Board conducts hearings at ninety-day intervals to determine whether the inmate should remain in lockdown. The Disciplinary Board conducted the necessary hearings in the instant case, and no contention is made that Sanchez was not afforded procedural due process.