341 So.2d 1157 (1976)
Felix CERNA, Jr.
v.
Norval J. RHODES et al.
No. 11064.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
Rehearing Denied February 14, 1977.
Writ Refused March 31, 1977.
*1158 Thomas Guzzetta, Thibodaux, for plaintiff and appellant.
Waitz, Weigand & Downer by Huntington B. Downer, Jr., Houma, for Norval J. Rhodes.
Richard L. Bodet, New Orleans, for Ray Mangrum.
Before ELLIS, CHIASSON and PONDER, JJ.
ELLIS, Judge:
This is a suit for damages for wrongful arrest and malicious prosecution filed by Felix Cerna, Jr. against Norval J. Rhodes, District Attorney of the 32nd Judicial District, and State Trooper Ray Mangrum. After trial on the merits, judgment was rendered dismissing plaintiff's suit as to both defendants, and he has appealed.
*1159 Mr. Cerna was arrested on the night of April 1, 1974, for driving while intoxicated. When he was being booked, a small pill box containing two capsules and one tablet was found among his possessions. The arresting officer, Detective Johnny Mann, testified that he asked plaintiff if he had a prescription for them, and that plaintiff responded by saying that he wanted to call his lawyer. Plaintiff, on the contrary, testified that he told Detective Mann that the medication had been prescribed by Dr. Robert R. Pierce of Houston, Texas, for an epileptic condition and that the prescription had been filled at the Quality Pharmacy in Thibodaux, Louisiana.
Detective Mann then showed the contents of the pill box to State Trooper Ray Mangrum, a narcotics officer, and advised Trooper Mangrum that plaintiff did not have a prescription. Trooper Mangrum identified the tablet to be "Mebaral", a controlled dangerous substance, using the Physicians Desk Reference as his source of information. Based on that identification and the information given him by Detective Mann, Trooper Mangrum executed the affidavit charging plaintiff with illegal possession of Mebaral.
On April 2, 1974, plaintiff contacted Ronald L. Myers, an attorney at law, who obtained his release on bond. Mr. Myers subsequently wrote to Dr. Pierce relative to securing copies of the prescriptions he gave plaintiff. He also talked to District Attorney Rhodes, and told him that plaintiff had a valid prescription for the drug found in his possession. Mr. Myers recalled that Mr. Rhodes suggested he come back to discuss the matter after he had obtained a copy of the prescription. Before this happened, plaintiff had obtained another attorney, and Mr. Myers was out of the case.
Plaintiff's second lawyer, Ralph D. Hillman, testified that he was first consulted by plaintiff on April 9th or 10th, 1974. He stated that he wrote to the Houston doctor to confirm that he had issued the prescription, and received a letter from him. He also got a copy of the prescription from plaintiff, which he forwarded to Mr. Rhodeses. He testified that he talked to Mr. Rhodes who pointed out that the Mebaral prescription which he had sent was dated April 4, 1974, three days after the arrest. Mr. Hillman then returned to the pharmacy and got a copy of the original prescription, dated November 12, 1973, which he showed to Mr. Rhodes, requesting that he dismiss the charges. He stated that Mr. Rhodes told him to bring the doctor to court and that he was not going to dismiss the charges. Mr. Hillman did not show Mr. Rhodes a medical report from Dr. Pierce, nor any evidence other than the prescription.
Mr. Rhodes had no recollection of the substance of his conversations with Mr. Myers and Mr. Hillman, although he could recall having spoken to both of them relative to Mr. Cerna.
Later, Mr. Cerna retained a third attorney, Thomas Guzzetta. On October 3, 1974, Mr. Guzzetta wrote the following letter to Mr. Rhodes:
"This letter is to confirm our telephone conversation of September 17, 1974, in which I advised you that I will represent the defendant in the above captioned proceeding. This letter is to further confirm to you my statement made to you in this conversation that Mr. Cerna holds a prescription for the mebaral found on his person on the day of his arrest, which prescription was issued on December 12, 1973. Although I offered in our telephone conversation to present you with a copy of this prescription, you stated that you would nevertheless continue with the prosecution of this matter.
"This letter is to advise you that unless this prosecution is dismissed within 10 days, Mr. Cerna has requested that suit be filed against you under federal legislation in the U. S. District Court seeking damages for wrongful and malicious prosecution."
Mr. Rhodes replied as follows:
"The fact that Mr. Cerna had a prescription for mebaral issued December 12, 1973 is not indicative of anything to me, especially since he was arrested in April *1160 of 1974, some four months later. Further, the medication, if you assume it was legally dispensed, was not in the required container, that is, the container given to Mr. Cerna by the alleged physician on the alleged date.
"I suggest you seek redress in Federal Court because this charge will not be dismissed."
Prior to trial, a motion to quash, based on the alleged unconstitutionality of R.S. 40:969(C) was filed on behalf of plaintiff. At the hearing held thereon, plaintiff's attorney also attempted to argue that plaintiff had a prescription, but was precluded from doing so. Shortly after the argument, he filed a supplemental motion to quash, alleging the existence of the prescription, but did not attach a copy of it thereto. Apparently no hearing was ever held on the supplemental motion.
Eventually, the case was tried before a jury. According to the testimony in this case, the State proved a prima facie case against plaintiff. After introduction of the testimony of Dr. Pierce and introduction of the November 12, 1973, prescription, a motion for a directed verdict was granted, since plaintiff had proved to the satisfaction of the trial judge that he was legally in possession of the Mebaral. Thereafter, this suit was filed.
We are presented with two different causes of action. That against Trooper Mangrum is for false arrest, and that against Mr. Rhodes is for malicious prosecution.
In a suit for damages for false arrest, a plaintiff must prove that the arrest was made without color of legal authority. DeBouchel v. Koss Const. Co., 177 La. 841, 149 So. 496 (1933). An arrest for a felony committed out of the presence of the officer may be legally made if the officer has "reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer." Article 213, Code of Criminal Procedure. In this case, there is evidence to the effect that Trooper Mangrum was given the Mebaral tablet by a fellow officer plaintiff without a prescription. We think this constitutes "reasonable cause" for him to believe that plaintiff had violated R.S. 40:969(C). The trial judge must have believed Detective Mann's testimony that plaintiff would not say if he had a prescription, rather than plaintiff's testimony to the contrary. We therefore find no manifest error in the conclusion of the trial judge as to the liability of Trooper Mangrum.
In a malicious prosecution suit, the detention must be malicious, but under the due forms of law. DeBouchel v. Koss Const. Co., supra. To maintain his suit, plaintiff must prove: (1) commencement or continuation of a proceeding against him; (2) its termination in his favor; (3) lack of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damage resulting therefrom. Robinson v. Goudchaux's, 307 So.2d 287 (La.1975); Meyers v. Edwards, 256 So.2d 337 (La.App. 1st Cir. 1971).
The issue presented by this appeal is, in plaintiff's words, "the question of whether or not a prosecuting attorney is liable in damages for malicious prosecution, where he continues a criminal prosecution arbitrarily and capriciously, after being apprised of the existence of exculpatory evidence, which one could reasonably expect to result in an acquittal of the accused."
We note that the only hard evidence ever presented to the District Attorney prior to the trial was a copy of the November 12, 1973, prescription, which was shown to him by Mr. Hillman.
Mr. Rhodes testified at the trial as follows:
"Mr. Guzzetta, I simply take the general position that anyone may legitimately, number one, anyone may legitimately secure a prescription for any type of drug. I can also assume arguendo that any person could have illegally obtained the same type of drug from other than a pharmacist. I know not as the District Attorney whether the pills that a possible defendant is found with are in fact those that *1161 are dispensed by a druggist at the request of a physician of are they illicitly attained, and my (sic), as I remember writing the letter to you, that was my reason for stating further because there was no proof to me at the time that it was in fact prescribed because it was not in the container, it did not have a date, I have no way, nor did the agent who made the case have no way, of knowing from where the drugs came."
Plaintiff takes the position that it was the duty of the District Attorney, after learning of the prescription, to make an investigation of the legitimacy thereof, and to dismiss the prosecution if he finds that the accused possessed the drug under a valid prescription.
Article 61 of the Code of Criminal Procedure provides:
"Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute."
The District Attorney also has the authority to dismiss any criminal procedure pending before the court. Article 691, Code of Criminal Procedure.
Although the authority and discretion of the District Attorney is broad, we do not believe that he has the duty to investigate matters of defense which are brought to his attention. He certainly has the authority to do so, but to require it of him would be to place an intolerable burden on the office.
It is clear that there was probable cause for prosecution in this case. The testimony of the judge who tried the criminal case makes it clear that the State proved a prima facie case against Mr. Cerna. Certainly, no malice has been shown.
We note also that other than verbal communication with the District Attorney, none of Mr. Cerna's counsel ever furnished Mr. Rhodes with affidavits or depositions from the doctor and pharmacist involved, or made any attempt to confirm of the prescription which Mr. Rhodes allegedly saw. We think the burden of doing this must rest with the defendant and not with the State.
The judgment appealed from is affirmed, at plaintiff's cost.
AFFIRMED.