PONDER, Judge.
Plaintiffs appealed the trial court’s dismissal of their 42 U.S.C. § 1983[1] action *1051 alleging that certain policies in effect at Camp J, Louisiana State Penitentiary, were violative of Amendments One,[2] Five,[3] Eight[4] and Fourteen[5] of the Federal Constitution and Article 1, Sections 3[6] and 12[7] of the Louisiana Constitution. The following policies in effect at Camp J were complained of: 1) the cuffing of prisoners’ hands behind them when transferred to and from all call-outs, the prison’s hospital, dentist or doctor, and the visitation area; 2) the allowance of one five-minute personal phone call per month with the prisoner’s hands cuffed behind him; 3) the denial of the privilege of viewing television and the failure to provide prisoners with access to newspapers and radios; 4) feeding the prisoners cold food; 5) prohibiting communication via letter (farm mail) between prisoners at Camp J and other prisoners; and 6) the confiscation of personal property without reimbursement and denial of the privilege of purchasing certain personal hygeine products from the prison canteen due to the actions of some prisoners.
The Commissioner, following the hearing, recommended that plaintiffs’ suit be dismissed. He found that the policies alleged by plaintiffs were not in dispute except for the question of whether the food was served cold.[8] He held the rights asserted by the prisoners did not rise to constitutional standards. The trial judge followed the recommendations of the Commissioner and dismissed plaintiffs’ suit.
The issues on appeal are: 1) the constitutionality of policies resulting in restrictions on all inmates due to the actions of a few; 2) whether the prison policies violate the plaintiffs’ First, Fifth, Eighth and Fourteenth Amendment constitutional rights; and 3) whether the proper test to be applied is the “rational relationship” or “compelling interest” test.
Plaintiffs first argue that prisoners at Camp J should not be deprived of certain articles;[9] that such policies deny them due process and equal protection of the law and constitute cruel and unusual punishment.
*1052 The evidence indicated that articles that could be used as containers were taken from the inmates due to the tendency to heat liquids or store human waste in the containers and throw contents at other inmates. The inmates were also prohibited from buying some highly flammable products from the prison canteen.
Prison administrators, who are responsible for maintaining internal order and discipline, must have great discretion in accomplishing their purpose within constitutionally acceptable parameters. Fulford v. Phelps, 365 So.2d 575 (La.App. 1st Cir:1978). The State has a responsibility under the Eighth Amendment to protect the safety of its prisoners. Streeter v. Hopper, 618 F.2d 1178 (5th Cir.1980).
The policy of depriving prisoners of certain articles is rationally related to the legitimate state interest of protecting the prisoners and guards and maintaining order. The purpose of the policy is primarily for safety reasons rather than to punish all prisoners for the acts of a few. We find no denial of due process or of equal protection under either the Federal or the State Constitution.
Such actions are not “cruel and unusual under contemporary standards” and do not "involve the unnecessary and wanton infliction of pain.” See Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).
There was no proof of any discrimination based on race, religion or national ancestry or of any arbitrary, capricious or unreasonable discrimination based on age, sex, or physical condition.
Plaintiffs next argue that the policies complained of viewed in their totality, offended their First, Fifth, Eighth and Fourteenth Amendment rights under the United States Constitution. We disagree.
Although the CCR unit, another disciplinary camp at Angola, has a television set, we find no constitutional violation in not providing the Camp J inmates with one. The inmates confined at CCR are generally there for a much longer term than those at Camp J. We agree with the Commissioner’s finding that such actions do not provide a discriminatory base. We know of no requirement that prisons must provide indigent prisoners with newspapers and magazines.
The requirement that the prisoners be cuffed or restrained outside of their housing tier is rationally related to the legitimate interest of safety, particularly where the prisoners involved are classified as extreme risks and maximum security prisoners. We find no constitutional violation.
The restriction of “farm mail” in and out of Camp J does not place any restrictions on United States mail according to the testimony of Warden Maggio. While a prison inmate retains a constitutionally protected right to reasonable correspondence with persons in the outside world, Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), institutional authorities have a peculiar and compelling interest in regulation of communications between prisoners. See Watts v. Brewer, 588 F.2d 646 (8th Cir.1978). We find that the restriction of “farm mail” is consistent with the prison’s legitimate policy of preventing drug trafficking[10] and of maintaining security within the prison walls.
The general conditions of confinement at Camp J do not violate the prohibition against cruel and unusual punishment under the Eighth Amendment. The deprivations complained of are not “totally without penological justification” and are not “occasioned deliberately, as punishment or mindlessly with indifference to the prisoner’s humanity.” See Fulford v. King, 692 F.2d 11 (5th Cir.1982).
Plaintiffs next argue that the proper test to be applied in analyzing prisoners’ claims is the “compelling state inter- *1053 est” test rather than a “rational relationship” test. However, since the prisoners neither claim to be, nor are, members of a suspect class, the State need only demonstrate that its policies are rationally related to a legitimate state interest. Fulford v. King, supra. At any rate, we believe the actions would be approved under either test. We find no error.
Por these reasons, the judgment of the trial court is affirmed with costs assessed to the plaintiffs.
AFFIRMED.

. 42 U.S.C. § 1983:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or cause to be subjected, any citizen of the United States or other person within the jurisdiction thereof to- the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

. U.S. Const.Amendment I.:
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

. U.S. Const.Amendment V.:
No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

. U.S. Const.Amendment VIII.;
Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

. U.S. Const.Amendment XIV.:
Section I. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

. La. Const. Art. I, § 3;
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

. La. Const. Art. 1, § 12;
In access to public areas, accommodations, and facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical condition.

. It was also established that the method of restraint had generally been changed to cuffing the hands in front to waist belt restraints rather than behind the prisoner’s back.

. The articles in question include “Pond’s Cocoa Butter”, styrofoam cups and typewriter covers.

. Warden Maggio testified that farm mail which outlined drug sources and where one prisoner had left his "stash” had been intercepted.