900 So.2d 297 (2005)
Kevin PETERSON, Plaintiff-Appellant
v.
Walter E. MAY, Jr., District Attorney, and James Hatch, Assistant District Attorney, Defendant-Appellees.
No. 39,470-CA.
Court of Appeal of Louisiana, Second Circuit.
April 13, 2005.
Rehearing Denied June 2, 2005.
Kevin Peterson, In Proper Person Appellant.
*298 James R. Hatch, Homer, for Appellee.
Before WILLIAMS, MOORE and LOLLEY, JJ.
WILLIAMS, J.
Kevin Peterson, an inmate at David Wade Correctional Center ("DWCC"), filed a petition seeking a writ of mandamus against Second Judicial District Attorney Walter E. May, Jr. and Assistant District Attorney James R. Hatch. Peterson sought to have May and Hatch ordered to investigate and prosecute certain criminal complaints submitted to them by Peterson against DWCC personnel. The trial court subsequently sustained an exception of no cause of action and dismissed Peterson's suit with prejudice; this appeal followed. For the following reasons, we affirm the trial court's judgment.

FACTS
In his petition for a writ of mandamus, Peterson alleged that May and Hatch had a legal duty, and had "absolutely no discretion" with respect to that duty, to inquire into the facts of Peterson's "Formal Criminal Complaints," to summon the persons named in the complaints and to have those persons "appear before a magistrate or a judge in order that their depositions might be taken."
The defendants filed an exception to the petition for a writ of mandamus and argued that under the provisions of Article 3863 of the Louisiana Code of Civil Procedure, mandamus is not applicable to discretionary duties. Then, citing LSA-C.Cr.P. art. 61, they asserted that "[t]he decision to prosecute is solely within the power and authority of the district attorney." Accordingly, they argued that mandamus was not available to Peterson "to enforce his will against the State of Louisiana by attacking the Warden and others at Wade Correctional Facility through criminal charges."
On August 2, 2004, a hearing was conducted on the exception. Peterson was present in proper person; Hatch appeared on behalf of the defendants. Following the arguments, the court granted the exception and ordered Peterson's suit dismissed with prejudice. In explaining the court's decision, the court stated at the conclusion of the hearing:
The Court believes that the decision as to whether or not to prosecute a complaint, whether or not to investigate a complaint, whether or not to institute prosecution, whether or not to take a matter that's been instituted to trial is solely and completely within the discretion of the district attorney . . . unless it is a matter that is given to the authority of the Attorney General of the State of Louisiana pursuant to Article 62.
The Court finds that because this was a discretionary decision available to the prosecuting authority of the Second Judicial District, that mandamus will not lie. That doesn't mean other things will not lie. If there is damage, there certainly can be lawsuits filed. But, with regard to the mandamus writ[,] . . . the Court finds that the exception filed by the Second Judicial District Attorney has merit and the Court sustains that exception. By sustaining it, the Court dismisses this matter.
Thereafter, the court granted Peterson's oral motion for an appeal.

DISCUSSION
Peterson argues that the district court erred in holding that the district attorney had no lawful duty requiring action to be taken on Peterson's complaints. He asserts that the court, by holding that the district attorney had the sole, plenary power under LSA-C.Cr.P. art. 61 to institute *299 a criminal prosecution, violated Peterson's constitutional right of access to the courts and his constitutional right to petition the government for redress of grievances.
In support of his position, Peterson asserts that the scope of LSA-C.Cr.P. art. 61 extends only to criminal prosecutions that are instituted or pending, and that because none of his formal complaints had been instituted, and none were pending, Article 61 does not apply in this case. He also cites State ex rel. Bourg v. Marrero, 132 La. 109, 61 So. 136 (1913), which refers to former Section 1018 of the Revised Statutes that provided that the Attorney General or any district attorney had a duty to inquire, ex officio, when informed that a crime or misdemeanor had been committed, and when no complaint or declaration thereof had been made before any judge or justice of the peace. For the following reasons, we reject Peterson's arguments.
Article 3861 of the Louisiana Code of Civil Procedure defines mandamus "as a writ directing a public officer or a corporation or an officer thereof to perform any of the duties set forth in Articles 3863 and 3864." Under the provisions of Article 3863, a writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. The prescribed duty must be purely ministerial; mandamus will not lie to compel performance of an act which contains any element of discretion, however slight. Mandamus may issue where the law provides no relief by ordinary means or where the delay involved in pursuing ordinary means may cause injustice. Walker v. Rinicker, 28,179 (La.App. 2d Cir.4/3/96), 671 So.2d 1267, writ denied, 96-1103 (La.6/7/96), 674 So.2d 977.
The provisions of LSA-C.Cr.P. art. 61 state:
Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when and how he shall prosecute.
In Cerna v. Rhodes, 341 So.2d 1157 (La. App. 1st Cir.1977), writ denied, 343 So.2d 1067 (La.1977), the first circuit cited Article 61 and, noted the broad authority and discretion of the district attorney:
[W]e do not believe that he [the district attorney] has the duty to investigate matters of defense which are brought to his attention. He certainly has the authority to do so, but to require it of him would be to place an intolerable burden on the office.
In so holding, the court rejected the plaintiff's position that it was the duty of the district attorney, after being informed that the plaintiff had a prescription for drugs for which the plaintiff had been charged with illegal possession, to make an investigation of the legitimacy of the plaintiff's claim and to dismiss the prosecution if the plaintiff had a valid prescription for the drugs.
Although Cerna v. Rhodes, supra, was a suit for damages and concerned investigating a possible defense, in Jumonville v. Hebert, 170 So. 497 (La.App. 1st Cir.1936), the plaintiff filed a suit for mandamus against the Mayor, the Marshal and five members of the Board of Selectmen of the Town of Plaquemine to compel them to enforce state gambling laws and town ordinances. The appellate court framed the question as whether or not the court had:
the right by means of [a writ of mandamus] to compel an officer to enforce the law against certain prohibited acts where the persons and places alleged to be violating those laws are pointed out to the officer and named in the petition, *300 and where it is the mandatory duty of such officer to see that the laws are enforced.
Recognizing that a writ of mandamus ordinarily will issue to compel a public officer to perform a plain, mandatory, ministerial duty, involving the exercise of no discretion or independent judgment on his part, the court answered the question in the negative, stating:
[T]he writ cannot be used to compel an officer to enforce certain criminal laws against specified persons accused by a private citizen with a violation of those laws, even though it is the duty of such officer to enforce such laws.
The Jumonville v. Hebert Court noted that it would be impractical and inconvenient for the court to enforce and make effective the writ of mandamus in such a case, considering that the methods and means to be employed in enforcement necessarily must be left largely to the sound judgment and discretion of the officer. The court also reasoned that for it to compel officers via mandamus to do what allegedly was their duty in stopping and suppressing gambling would make the court the "supervising agency" over the executive officers placed in their position by the people in a political capacity. In this same vein, the court later stated that while these officers had a duty to enforce the criminal laws, "the failure or refusal of such officers to discharge that duty in particular instances is more of a political question than a legal one." The court concluded by stating that such questions were left for settlement to the people through the medium of the ballot when the officials were elected or in recall elections or in proceedings for the removal of such officials.
Based upon the law discussed above, we conclude that while enforcement of the law certainly is a primary duty of a district attorney, it is not a "ministerial duty" in the sense that a district attorney can be forced, pursuant to a writ of mandamus, to investigate or institute prosecution in a particular instance. It is essential for a district attorney, as a duly-elected executive officer of the people, to have great discretion in deciding how to carry out the functions of the office, including what matters to investigate and what matters to prosecute. Moreover, we disagree with Peterson's argument that the investigation of his complaints falls outside the scope of LSA-C.Cr.P. art. 61. In Plaquemines Parish Commission Council v. Perez, 379 So.2d 1373 (La.1980), the Louisiana Supreme Court, citing Article 61, stated that the investigatory authority of the district attorney is subsumed under his power to take charge of every criminal prosecution in his district, to represent the state before the grand jury and to act as legal advisor to the grand jury. Thus, in the instant case, the district attorney's power to take charge and control of every criminal prosecution in his district logically included his authority to investigate Peterson's complaints.
Next, we note that the language referred to by Peterson in State ex rel. Bourg v. Marrero, supra, came from Section 1018 of the Revised Statutes in effect at the time that case was decided; the statutory section provided in part that when a district attorney was informed that a crime or misdemeanor had been committed, and that no complaint or declaration thereof had been made before any judge or justice of the peace, the district attorney had the duty to inquire, ex officio, into the facts, by causing those persons who were supposed to have some knowledge of the facts to be summoned before a judge or justice of the peace so that their depositions could be taken. This statutory language subsequently was incorporated into *301 the provisions of LSA-R.S. 15:156 of 1950. However, when the Code of Criminal Procedure was implemented pursuant to Act 310 of 1966, former LSA-R.S. 15:156 had no replacement and, effectively was repealed. Accordingly, even if a ministerial duty would have existed in the instant case under the former statutory language, such is not now the case.
Finally, we reject Peterson's argument that the trial court's refusal of mandamus operated to violate Peterson's right of access to the courts and right to petition the government for redress of grievances. As noted by the trial court, the fact that mandamus will not lie does not mean that Peterson had no other course of action through which he could seek a remedy for allegedly being the "victim of various and repeated felony offenses and crimes."

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
APPLICATION FOR REHEARING Before WILLIAMS, STEWART, GASKINS, MOORE, and LOLLEY, JJ.
Rehearing denied.