960 So.2d 1260 (2007)
Kevin PETERSON, Plaintiff-Appellee,
v.
Venetia MICHAEL, et al., Defendants-Appellants.
No. 42,315-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
*1261 Susan Wall Griffin, for Appellant Department of Public Safety and Corrections.
Kevin Peterson, In Proper Person.
Before STEWART, GASKINS and LOLLEY, JJ.
GASKINS, J.
The Louisiana Department of Public Safety and Corrections (DPSC) appeals from a trial court judgment which prohibited it from placing the plaintiff inmate, Kevin Peterson, in strip tier housing without an adjudication that he had committed a new rule violation. The judgment also ordered the DPSC to review a prior disciplinary matter involving the inmate. We reverse and vacate the trial court judgment.

FACTS
In November 2006, Peterson, an inmate at David Wade Correctional Center (DWCC), filed an application seeking injunctive relief. Named as defendants were the warden of the correctional center, a compound unit manager, and a classification officer, all of whom are employees of the DPSC. According to his petition, Peterson was subjected to "Policy # 53" conditions for 30 days for a September 2006 incident in which he threw feces at another inmate. He was then continued under Posted Policy # 53 for an additional period of time, supposedly because of his past disciplinary behavior. Apparently, Posted Policy # 53 involves housing an inmate without any items in his cell and requiring him to wear a paper gown; it is known as being placed in a strip cell or on a strip tier.[1] Peterson asserted that he was being denied "basic human necessities" such as soap, towels, clothing, dental hygiene items, footwear, and bedding, in violation of the Eighth Amendment. He further alleged that deprivation of certain items, such as soap and toothpaste, had adversely affected his health. He requested compensatory damages of $35,000 and punitive damages of $35,000, as well as injunctive relief to prevent prison officials from continuing him under Posted Policy # 53 conditions.
On November 16, 2006, Judge Jimmy Teat of the Second Judicial District Court (JDC) filed a screening judgment with assigned written reasons. The court allowed the filing of the instant suit and fixed for hearing his request for a preliminary injunction.
*1262 On November 30, 2006, Peterson filed an application for leave to file a petition for a writ of habeas corpus. An order was signed fixing a hearing on the application for December 7, 2006.
On December 1, 2006, the defendants filed a motion seeking dismissal of Peterson's motion for a temporary restraining order. They asserted that Peterson was no longer housed on the strip tier, thus rendering the matter moot. Alternatively, they requested transfer to the 19th JDC, which they asserted had exclusive jurisdiction under the Corrections Administrative Remedy Procedure (CARP).
The matter was heard by Judge Jenifer Ward Clason on December 7, 2006. Peterson represented himself at the hearing.[2] He argued that Posted Policy # 53 was illegal. According to Peterson, Posted Policy # 53 provides for an inmate to be placed on strip cell status for 24 hours for a first transgression and for 30 days on a second transgression or if he demonstrates a documented pattern of misconduct. Since he had a prior transgression, Peterson was given 30 days for the September 2006 incident. He asserted that he was maintained on strip cell status after the end of 30 days, not for a new transgression, but because the prison authorities decided at that point that he had a documented pattern of behavior. He also contended that the policy should be promulgated under the Administrative Procedure Act (APA). The defendants argued that in September 2006, Peterson was adjudicated through the disciplinary board court of throwing feces at another inmate and that he had notice that this was unacceptable conduct.[3] They asserted that Posted Policy # 53 is a posted policy which does not have to be promulgated like a regulation. The defendants also contended that placement on the strip tier is considered a housing classification.
At the conclusion of the hearing, the trial court ruled that Posted Policy # 53 was not a regulation that required promulgation under the APA. However, the court also ordered that the prison could not place Peterson on the strip cell tier without a new infraction.
The trial judge noted that this case was allowed despite the automatic stay and successive claims provisions of La. R.S. 15:1186 and La. R.S. 15:1187 because of the allegations that the strip cell placement resulted in medical problems. However, the evidence presented at the hearing revealed that Peterson had complained and received medical treatment for these conditions.
During the hearing, there was a discussion about Peterson's loss of 60 days of good time and his possible release in the near future. Peterson claimed that the good time was lost due to a jailer who allegedly falsified a report on him and was forced to resign for doing something similar to another inmate. The court requested that counsel for the DPSC look into that matter and determine if that complaint had any merit which would justify the restoration of the lost good time days.
On December 14, 2006, the trial court signed a judgment which prohibited the defendants from placing Peterson on the strip tier if he was not adjudicated as *1263 having committed a new rule violation. It also ordered the defendants to review disciplinary proceedings initiated by the fired correctional center employee and, if the employee's statements were deemed to lack credibility, to give Peterson credit for the 60 days of good time lost due to that employee's statements. In all other respects, the court rejected Peterson's claims, and it ordered that court costs be assessed equally.
The defendants sought a suspensive appeal.
Peterson filed a motion for a copy of the judgment and the transcript of the hearing. On January 4, 2007, the court denied the motion for the transcript and noted that Peterson had been released from the correctional center. Peterson did not file a brief in this court.

STRIP CELL PLACEMENT
The legislature has delegated to the secretary of the DPSC broad authority to classify and discipline inmates within the jurisdiction of the department in order to maintain order and safety within Louisiana's prison system. La. R.S. 15:828; La. R.S. 15:829; Sanchez v. Hunt, 329 So.2d 691 (La.1976).
In order to help provide structure and organization for Louisiana prisons, the DPSC has established the Disciplinary Rules and Procedures for Adult Inmates. These rules provide a framework within which the inmate population can expect the disciplinary system to function. LAC 22:I.343. Pursuant to the requirements of the APA, these rules are promulgated in the Louisiana Register.
The actual disciplinary rules are found in § 365 of the Disciplinary Rules and Procedures for Adult Offenders. They include such Schedule B violations as defiance (which includes throwing any substance at an employee) and such Schedule A offenses as disobedience (failure to obey the posted policies for the facility in which an inmate is confined). LAC 22:I.365. The penalty schedule for these violations is found in § 359. Major violations are Schedule B offenses, and the penalties so reflect. See LAC 22:I.355 and LAC 22:I.359. According to § 355, which discusses sanctions, an inmate who has established "a documented pattern of behavior," indicating that he is dangerous to himself or others, is a habitual offender who may receive Schedule B penalties for a Schedule A offense. This provision also states that an inmate who violates more than one rule or the same rule more than once during an incident may receive a permissible sanction for each violation. LAC 22:I.355.
In addition to the Disciplinary Rules, the various correctional facilities have posted policies. A posted policy is defined in § 345 of the Disciplinary Rules and Procedures for Adult Offenders as a policy memorandum "detailing what behavior is required or forbidden of inmates and generally reflects the individual needs of the facility. . . . Posted policies must be distributed and posted in such a manner that inmates are placed on notice as to what behavior is required or forbidden, and the actions that may be taken should the policy be violated." LAC 22:I.345.
Peterson argued that Posted Policy # 53 was illegal and that it should have been promulgated under the APA. However, a posted policy for a particular facility, like DWCC's Posted Policy # 53, does not have to be formally promulgated in the Louisiana Register.
Generally, prison officials are given broad discretion in administering prisons, and prisoners are seen to "retain only a narrow range of protected liberty interests." Woods v. Edwards, 51 F.3d 577 (5th Cir.1995).
*1264 Absent a violation of some constitutional right of equal protection or due process, the courts may not interfere in the DPSC's classification procedures. Prison authorities are responsible for maintaining internal order and discipline. These administrators must have a great deal of discretion in accomplishing their purpose within constitutionally refined parameters. Fulford v. Phelps, 365 So.2d 575 (La.App. 1st Cir.1978); Armstead v. Phelps, 449 So.2d 1049 (La.App. 1st Cir. 1984).
Furthermore, like the trial court, we conclude that Peterson failed to establish any constitutional violation or illegality as to the posted policy.[4] At the time of the hearing, Peterson was no longer on strip cell tier, and counsel for the defendants agreed that he could not be placed back on it without a new infraction. There was no basis for the granting of injunctive relief in Peterson's favor and consequently we reverse and vacate the injunction.

GOOD TIME
At the hearing, Peterson also raised the issue of his loss of 60 days of good time due to allegedly false statements by a former correctional center employee. At the conclusion of the hearing, the trial court merely requested that counsel for the defendants look into the matter. In its subsequent judgment, it ordered the defendants to review the disciplinary proceedings resulting in the loss of good time and credit Peterson for the 60 days of good time if the employee's statements were deemed to lack credibility. However, La. R.S. 15:571.15 mandates that venue for actions contesting computation of sentence, discharge, parole, and good time dates shall be brought in the parish of East Baton Rouge. See State v. Robinson, XXXX-XXXX (La.App. 4th Cir.4/24/02), 818 So.2d 246, writ denied, 2002-2064 (La.6/20/03), 847 So.2d 1222; Stemley v. Goines, XXXX-XXXX (La.App. 4th Cir.4/11/07), 954 So.2d 403. We agree with the defendants that this matter was not properly before the 2nd JDC in Claiborne Parish in the instant proceedings.
Consequently, we reverse the trial court judgment insofar as it directed action on this issue.

CONCLUSION
The judgment of the trial court is reversed and vacated. Costs of this appeal are assessed against the appellee, Kevin Peterson.
REVERSED.
NOTES
[1] No copy of Posted Policy # 53 is found in the record.
[2] During his incarceration, Peterson was an active pro se litigant. Since 2002, he has filed more than 20 applications in this court. Among his reported cases are Peterson v. Gildon, 40,328 (La.App.2d Cir.12/30/05), 917 So.2d 1284, writ denied, XXXX-XXXX (La.10/27/06), 939 So.2d 1277; Peterson v. May, 39,470 (La.App.2d Cir.4/13/05), 900 So.2d 297; Peterson v. Austin, 36,365 (La. App.2d Cir.12/11/02), 836 So.2d 235, writ denied, XXXX-XXXX (La.1/30/04), 865 So.2d 70.
[3] The decision form states that he "[t]hrew human feces on inmate orderlies and nurse."
[4] Among Peterson's complaints pertaining to strip cell placement was deprivation of "basic human necessities." However, the information presented at the hearing established that an inmate confined in a strip cell receives a toothbrush and toothpaste once a day and is afforded medical treatment as Peterson was. We also note that in an earlier case, Peterson sought to enjoin corrections officials from depriving him of a mattress while in disciplinary detention. However, it was demonstrated that inmates in disciplinary detention were only deprived of mattresses during the day. See Peterson v. Hanson, XXXX-XXXX (La.App. 1st Cir.9/17/04), 897 So.2d 32.